[No. 2453]

IN THE MATTER OF THE APPLICATION OF WILLIAM H. SHELDON, FOR A WRIT OF HABEAS CORPUS.

[193 Pac. 967]

1. PERJURY—ATTORNEY GUILTY OF SUBORNATION OF PERJURY IN INDUCING CLIENT SUING FOR DIVORCE TO SWEAR FALSELY.

The act of the attorney for a wife suing for divorce in procuring her wilfully and corruptly to swear that she saw her husband, defendant in the action, in Reno, and at the time had no knowledge or information that he was coming there, etc., testimony tending to negative any prearrangement between the parties, was guilty of subornation of perjury, denounced by Rev. Laws, 6350, despite section 22 of the act relating to marriage and divorce, since the wilful and corrupt assertion of a falsehood in a matter important enough to affect the credibility of a witness whose testimony is material constitutes perjury.

2. PERJURY—INFORMATION CHARGING SUBORNATION NOT DEFECTIVE, THOUGH FAILING TO ALLEGE TESTIMONY NOT TRUE.

Information charging subornation of perjury against attorney for wife suing for divorce, in that he prescribed that the wife should wilfully and corruptly give testimony tending to negative any prearrangement between herself and her husband, was not defective because failing to allege that the testimony concerning the grounds of divorce was not true, since the guilt of a person who has sworn corruptly does not depend on the truth or falsity of the fact immediately in issue, as perjury may be committed as to circumstances having a legitimate tendency to prove or disprove such fact.

SANDERS, J., dissenting.

ORIGINAL APPLICATION of William H. Sheldon for a writ of habeas corpus. **Writ dismissed.**

*Augustus Tilden,* for Petitioner:

The questions propounded to the plaintiff in the divorce action were gratuitous to the last degree. The oath administered to her, so far as it went to the jurisdictional question here involved, was administered in an inquiry not authorized by law. Her testimony was immaterial and her oath was immaterial. "To constitute the crime of perjury, the false oath must not only be as to material facts, but it must also in itself be material." 20 Cyc. 1421. "The facts sworn to may be material, and yet the false swearing be no perjury because the oath performed no office in the case, and was wholly unimportant and immaterial." Beecher v. Anderson, 8 N. W. 539. "If the facts are stated, and it clearly appears that the testimony was not material, a formal allegation of materiality will not save the indictment." 30 Cyc. 1436. The oath must have been administered "in a matter where an oath was authorized or required by law." 30 Cyc. 1443. "The fact that the testimony was received is not, standing alone, sufficient." 30 Cyc. 1451.

*L. D. Summerfield,* District Attorney, and *W. M. Kearney,* Assistant District Attorney, for Respondent:

The petitioner should be remanded. The information states a public offense. The testimony given in the divorce action was material to the issue, as both bearing upon the case in chief, and because under the divorce statute the word "found" means to be found without collusion or agreement, and is a matter of proof and one of the issues in the case itself. Tiedemann v. Tiedemann, 36 Nev. 494; Merritt v. Merritt, 40 Nev. 385.

It is only necessary to allege and prove that certain facts testified to were false, and that they were material to the issue. It is not necessary that such facts were believed by the court, or that they affected its decision in any way. 30 Cyc. 1419; Mackin v. People, 115 Ill. 312; State v. Schill, 27 Iowa, 263; State v. Wakefield, 73 Mo. 549; State v. Smith, 137 N. W. 295; Harris v.

Railroad Co., 172 Mo. App. 261; People v. Howland, 167 Pac. 961.

Not only are actions for divorce closely scrutinized by the courts, but prosecutions for the crime of perjury have found the indulgent sympathy of those tribunals. Coleman v. State, 6 Okl. Cr. 252.

The alleged false testimony is material, independent of collusion for service. 30 Cyc. 1418; Marvin v. State, 53 Ark. 395; People v. Prather, 134 Cal. 436; People v. Howland, 167 Pac. 961; Herndon v. State, 72 South. 833; United States v. Shinn, 14 Fed. 448; State v. Berliawsky, 106 Me. 506; State v. Rosenberg, 88 Vt. 223.

The prearrangement with defendant for service within the county, in order to secure an early hearing, would be a strong circumstance bearing upon the court's conclusion whether plaintiff was a bona-fide resident, or simply present in the state in league with the defendant to secure a decree of divorce in the shortest possible time. "It is universally held that the facts sworn to need not be material to the main issue in the case. If the matter sworn to is in any way conducive to the point in issue, * * * it is nevertheless perjury." State v. Brown, 128 Iowa, 24. "The testimony need not be direct proof upon the issue. If the false statement is circumstantially material, * * * it is sufficient to sustain a charge of perjury." People v. Morris, 155 App. Div. 711.

It is the testimony of the plaintiff in the divorce proceeding that is alleged to be false. The relationship of the parties being most material to the court, the judge was entitled to know everything concerning it. Relying upon the uncorroborated testimony of the plaintiff, her credibility as to every relationship existing with the defendant was material to the issue. "The credit of a witness is always an element adapted to vary the result of the trial of a fact. Therefore it is a collateral issue therein. And it is perjury to swear corruptly and falsely to anything affecting such credit." 2 Bishop, Crim. Law, 8th ed., sec. 1032; Wilson v. State, 115 Ga. 206; State v. Cary, 158 Ind. 504; State v. Falkner, 175 Mo. 546;

State v. Norris, 9 N. H. 96; People v. Courtney, 94 N. Y. 490; State v. Miller, 26 R. I. 282; Washington v. State, 22 Tex. App. 26; Hanscom v. State, 93 Wis. 273; Coleman v. State, 6 Okl. Cr. 252; People v. Metzler, 21 Cal. App. 80.

By the Court, DUCKER, J.:

This is an original proceeding in habeas corpus. An information was filed in the Second judicial district court of the State of Nevada, in and for the county of Washoe, on the 29th day of April, 1920, by the district attorney of said county, in which petitioner was charged with the crime of subornation of perjury. A bench warrant was issued upon the information, and the petitioner was arrested by the sheriff of said Washoe County. He was released from the custody of the sheriff upon furnishing bail, and thereafter surrendered himself to the officer. It is from this custody he now seeks to be discharged upon this writ.

Petitioner is an attorney at law, and was attorney for the plaintiff in a divorce action entitled "Viola Mae Weaver, Plaintiff, v. Floyd Wm. Weaver, Defendant," heretofore tried in said court, and in which a decree of divorce was granted to plaintiff.

The charging part of the information is as follows:

"That one Viola Mae Weaver, on the 24th day of March, 1919, at and in Reno township, county of Washoe, State of Nevada, having then and there taken an oath before the Second judicial district court of the State of Nevada, in and for said county of Washoe, Hon. Edward F. Lunsford, judge, presiding, that she would testify truly in said court in the case then and there at issue, to wit, the case of Viola Mae Weaver, Plaintiff, v. Floyd Wm. Weaver, Defendant, an action to recover a judgment granting to plaintiff a decree of divorce, said oath being and having been administered by S. W. Longabaugh, ex officio deputy clerk of said Second judicial district court of the State of Nevada, in and for said county of Washoe, who then and there had

authority to administer such oath, did, in a matter material to .such issue, she, the said Viola Mae Weaver, plaintiff therein, having taken such oath as aforesaid, wilfully, corruptly, falsely, and feloniously, state, declare, and testify the truth to be, among other things, in substance and to the effect following, that is to say:

"That she, the said Viola Mae Weaver, saw the defendant in said action, Floyd Wm. Weaver, in Reno, Washoe County, Nevada, on the 19th day of March, 1919, as she was coming out from luncheon at the Golden Hotel, and that at said time and place she had no knowledge or information that the said Floyd Wm. Weaver was coming to Reno, Washoe County, Nevada; that at the time she, the said Viola Mae Weaver, came to Reno, Washoe County, Nevada, she had no agreement, arrangement, or understanding with the said Floyd Wm. Weaver that he would come to Reno, Washoe County, Nevada; that there was no understanding or agreement entered into between her, the said Viola Mae Weaver, and the said Floyd Wm. Weaver that a divorce action would be filed against him by her; and that she, the said Viola Mae Weaver, did not know before the 19th day of March, 1919, that it was possible, under the laws of the State of Nevada, to bring an action for divorce sooner than after a residence of six months.

"Whereas, all of said testimony was false; the said Viola Mae Weaver then and there well knowing such testimony to be false; that in truth and in fact, as said Viola Mae Weaver then and there well knew, the said Floyd Wm. Weaver came to the city of Reno, Washoe County, Nevada, on the 19th day of March, 1919, for the express purpose of being served with process in said case of Viola Mae Weaver, Plaintiff, v. Floyd Wm. Weaver, Defendant, pursuant to an agreement theretofore entered into between the said Viola Mae Weaver and the said Floyd Wm. Weaver, and further knew, prior to his said arrival in Reno, Washoe County, Nevada, that he was coming on said date for said purpose; that in truth and in fact, as said Viola Mae

Weaver then and there also well knew, she, the said Viola Mae Weaver, and the said Floyd Wm. Weaver had an agreement, arrangement, and understanding, theretofore entered into between them, that the said Floyd Wm. Weaver should come to Reno, Washoe County, Nevada; that in truth and in fact, as said Viola Mae Weaver then and there also well knew, she, the said Viola Mae Weaver, and the said Floyd Wm. Weaver had an understanding and agreement, theretofore entered into between them, that a divorce action would be filed by the said Viola Mae Weaver against the said Floyd Wm. Weaver in Washoe County, Nevada; and that in truth and in fact, as said Viola Mae Weaver then and there also well knew, she, the said Viola Mae Weaver, did know, before the 19th day of March, 1919, that it was possible to bring an action for divorce in Washoe County, Nevada, sooner than after a residence of six months.

"That said William H. Sheldon of the city of Reno, Washoe County, Nevada, was then and there feloniously concerned in the commission of the said perjury by the said Viola Mae Weaver, in the manner and form aforesaid, and did then and there feloniously aid and abet her in the commission of the same in the manner and form aforesaid, and did then and there corruptly, wickedly, maliciously, and feloniously command, induce, procure, solicit, suborn, instigate, and persuade the said Viola Mae Weaver the said wilful and corrupt perjury in the manner and form aforesaid then and there feloniously to do and commit.

"And the said William H. Sheldon then and there well knew and intended that the said Viola Mae Weaver would and should so as aforesaid wilfully, corruptly, falsely, and feloniously swear, state, declare, and testify, and well knew that the said matters, so as aforesaid by the said Viola Mae Weaver sworn to be true, were false, and were then and there known by the said Viola Mae Weaver to be false, and that the said Viola Mae Weaver, when she so as aforesaid swore, stated,

declared, and testified, did wilfully, corruptly, falsely, and feloniously commit wilful and corrupt perjury."

Section 6350 of the Revised Laws of Nevada, defining perjury and the subornation of perjury, reads:

"Every person having taken a lawful oath, or made affirmation in a judicial proceeding, or in any other matter where, by law, an oath or affirmation is required, who shall wilfully and corruptly make an unqualified statement of that which he does not know to be true, or who shall swear or affirm wilfully, corruptly, and falsely, in a matter material to the issue or point in question, or who shall suborn any other person to make such unqualified statement, or to swear or affirm, as aforesaid, shall be deemed guilty of perjury, or subornation of perjury, as the case may be."

1. The petitioner alleges that he is entitled to his discharge because the information does not state facts sufficient to constitute a public offense. It is his contention in this regard that the matter assigned as perjury in the information was not material either to the substantial merits of the case or to the jurisdiction of the court, and that as it could not therefore be made the foundation of a perjury charge against the plaintiff in the divorce action, the charge of subornation of perjury against the petitioner necessarily falls.

Section 22 of an act relating to marriage and divorce (Rev. Laws, 5338) provides in part that divorce from the bonds of matrimony may be obtained by complaint made under oath in the district court of the county in which the defendant shall be found. In respect to this provision counsel for petitioner argues that the circumstances under which defendant was found and served with process in Washoe County, whether by prearrangement with the plaintiff or otherwise, are immaterial as touching the jurisdiction of the court, because the plaintiff's residence conferred jurisdiction; that the length of residence required in divorce actions is intended for the protection of the defendant, which, like any other personal privilege, he may waive by

allowing himself to be found in the county wherein the action is commenced.

This question has been ably discussed by counsel for petitioner and also by counsel for the state, but we deem it unnecessary to determine the question, because the matter assigned as perjury in the information has such a bearing upon the merits of the case as to constitute corrupt and false swearing in a matter material to the issue. It had no direct bearing upon the main issue, but went to the credit of the plaintiff as a witness, and was therefore collaterally material to the real facts of the case.

The wilful and corrupt assertion of a falsehood under oath in a matter important enough to shake the credit of a witness whose testimony is material, will constitute perjury.

Mr. Bishop in his work on Criminal Law lays down the rule to be that whatever goes to the credit of a witness is material, so that perjury may be founded upon it. Bishop's New Criminal Law, secs. 1032–1038.

In 30 Cyc. 1420, the rule is thus stated:

"Perjury may be assigned upon testimony going to the credit of a material witness in a cause, although such evidence is legally inadmissible and ought not to be received."

In People v. Courtney, 94 N. Y. 490–494, the court said:

"The recent cases sustain the view that perjury may be assigned upon false testimony going to the credit of a witness."

In Wilson v. State, 115 Ga. 206, 208, 41 S. E. 696, 697, 90 Am. St. Rep. 104, 105, the court said:

"If he is called to testify to any material issue in the case, any matter relating to his credibility as a witness becomes collaterally material to the issue on trial; and being thus collaterally material, perjury may be assigned upon false testimony affecting the credibility of the witness."

The rule is thus stated in 21 R. C. L. 259:

"It is sufficient if it is material to any proper matter of inquiry, and is calculated to prop or bolster the testimony of a witness in some material point, or to support or attack the credibility of such witness."

When the principle recognized by these authorities is applied to this particular case, the matter charged in the information as false becomes a sufficient predicate for perjury. Its bearing upon the main issue in point of criminality may be thus tested: If its falsity had been made known to the court during the trial of the case, could it have influenced the court on the issue before it? 21 R. C. L. 259. We answer in the affirmative. It might well have affected the credit of the plaintiff as a witness to the extent of causing the court to disregard all of her testimony.

It must be borne in mind that the testimony alleged to have been false, and suborned by the petitioner, was given in a divorce action in which the state, in a sense, is a party to the proceedings. It is recognized by all authorities that the public is vitally interested in preserving the integrity of the marriage state because of its wholesome influence upon society. The court represents this interest of the state in divorce actions, and is in duty bound to scrutinize the testimony and proceedings with more care than in ordinary civil actions, to the end that collusion of the parties may not effect a dissolution of the marriage relation, when the real facts of the case, if known, would forbid it.

The testimony of Mrs. Weaver as set out in the information, tending to negative any prearrangement between herself and her husband, was, by this peculiar and important feature of the state's interest in the proceedings, entitled to more weight, as bearing upon her general credibility, than testimony of a similar nature would be accorded in ordinary civil actions. If false, it was a manufactured state of facts, clearly designed to induce the court to believe that the plaintiff and defendant were not acting in collusion as to any phase of the case; that they had no common interest in

the result of the trial, and thereby to place greater credence in the plaintiff's testimony concerning the grounds of divorce. It therefore amounted to something more than that kind of trivial testimony which ordinarily will not sustain a perjury charge on account of its immateriality.

2. There is no merit in the contention of counsel for the petitioner that the information is defective in this respect because it is not alleged therein that the testimony concerning the grounds of divorce was not true.

The guilt of a person who has sworn corruptly and falsely does not depend upon the truth or falsity of the fact immediately in issue. The principal fact in issue may be true, yet perjury may be committed as to circumstances which have a legitimate tendency to prove or disprove such fact. Commonwealth v. Grant, 116 Mass. 17; Mackin v. People, 115 Ill. 312, 3 N. E. 222; State v. Wakefield, 73 Mo. 549. It is therefore of no consequence whether the grounds of divorce as testified to by plaintiff in the action actually existed or not. If the testimony upon which the assignment of false swearing is based was untrue, as charged in the information, the plaintiff is guilty of perjury for the reasons given.

We conclude that the information charges petitioner with the offense of subornation of perjury, and that he is not unlawfully restrained of his liberty.

The writ is dismissed.

COLEMAN, C. J.: I concur.

SANDERS, J.: I dissent.